| | |
|---|---|
| United States District Court<br>Eastern District of New York | 1:19-cv-06448-ENV-CLP |
| Amy Warren, Iesha Conley, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>    - against -<br><br>Whole Foods Market Group, Inc.,<br><br>       Defendant | First Amended Complaint |

  Plaintiffs by attorneys alleges upon information and belief, except for allegations pertaining to Plaintiffs, which are based on personal knowledge:

  1.  Whole Foods Market Group, Inc. ("Defendant") manufactures or is the apparent manufacturer, distributes, markets, labels, advertises, and sells instant oatmeal containing oats and flax, under their 365 Everyday Value brand ("Product").

  2.  The 365 Everyday Value brand is a private label product manufactured by an unknown third-party to specifications and labeling requirements imposed by defendant.

  3.  The contract for manufacture and labeling of the Product requires the third-party supplier to indemnify defendant in any action related to an economic loss associated with the sale and distribution of the Product.

  4.  Consumers like plaintiffs are only aware of defendant's connection and control of the Product because the item contains defendant's corporate information, indicia of its responsibility for the Product.

  5.  Knowing that consumers like Plaintiffs are more interested in purchasing healthy food products that are free of added sugar, Defendant has sought to take advantage of this growing market by labeling the Product with the term "evaporated cane juice solids" instead of sugar.

6. By affixing such a label to the packaging of the Product that refers to "organic dehydrated cane juice solids," Defendant enticed Plaintiffs and the class of persons who purchased the Product in the State of New York (Class or Class Members) to pay a premium for the Product.

7. The Product is available to consumers from defendant's hundreds of stores across all 50 states, directly from defendant's website and from Amazon.com.

8. The Product is sold in boxes which contain packets of 40 g.

9. The relevant front labels representations include "Instant Oatmeal," "Oats & Flax," "Low Fat," "Vegan," "Good Source of Fiber," "Whole Grain Stamp," "Non-GMO Project Verified," "USDA Organic" and pictures of fresh raspberries on top of and around a heaping bowl of the product.



2

10. The Product's ingredient list on the back of the package states:

**INGREDIENTS:** ORGANIC ROLLED OATS, ORGANIC DEHYDRATED CANE JUICE SOLIDS, ORGANIC FLAXSEED, SEA SALT.

11. Consumers expect ingredients on a product to be declared by their common or usual name.

12. The FDA, in warning letters to companies, and guidance to industry, has repeatedly indicated its policy of restricting the names of ingredients listed on a food label to their common or usual name, as provided for in 21 C.F.R. § 101.4(a)(1).

13. An ingredient's common or usual name is the name that is established by common usage or regulation, as provided for in 21 C.F.R. § 102.5(d).

14. The common or usual name must accurately describe the basic nature of the food or its characterizing ingredients, and not be "confusingly similar to the name of the other food that is not reasonably encompassed within the same name," as provided for in 21 C.F.R. § 102.5(a).

15. In May of 2016, the FDA issued Final Guidance Regarding the Food Labeling Term "Evaporated Cane Juice" stating that it is false and misleading to label an ingredient as "evaporated cane juice:

> Sweeteners derived from sugar cane should not be listed in the ingredient declaration by names such as "evaporated cane juice," which suggest that the ingredients are made from or contain fruit or vegetable "juice" as defined in 21 CFR 120.1. We consider such representations to be false and misleading under section 403(a)(1) of the Federal Food, Drug, and Cosmetic Act (the Act) (21 U.S.C. 343(a)(1)) because they do not accurately describe the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups), as required by 21 CFR 102.5. [1]

16. Despite the FDA's regulations and guidance, Defendant has falsely and misleadingly listed "Organic Dehydrated Cane Juice Solids" as an ingredient on the Product's ingredient list, when in fact that ingredient is really sugar.

17. Where an ingredient contains the term "juice," consumers expect that ingredient to be derived from a consumable fruit or vegetable.

18. In fact, "juice" is defined as "the aqueous liquid expressed or extracted from one or more fruits or vegetables, purees of the edible portions of one or more fruits or vegetables, or any concentrates of such liquid or puree."[2]

19. "Juice solids" is a term associated with the processing of fruit juice such as oranges and apples.

20. Sometimes referred to as "soluble juice solids" or "soluble solids," this term is used to measure the quality of a juice and refers to a "valuable constituent" of a juice, i.e., "orange juice solids."[3]

21. However, in the context of the Product's "Organic Dehydrated Cane Juice Solids," the "juice solids" do not refer to an ingredient that reasonable consumers find "valuable."

22. This is because "[organic] dehydrated cane juice" – whether followed by the term

---

[1] https://www.fda.gov/media/97827/download (last visited 8-18-2020)
[2] 21 C.F.R. § 120.1(a).
[3] FDA Warning Letter to Penguin Juice Company, Inc., 2010-DT-18, Sept. 8, 2010 ("Your [juice] products are adulterated within the meaning of section 402(b)(1) of the Act [21 U.S.C. 342(b)(1)] because a valuable constituent, namely juice solids, has been in part omitted or abstracted from these products.").

4

"solids" or not – is another name for the ingredient commonly known as "sugar."

23. The FDA previously concluded that where an ingredient was described as "[evaporated] cane juice," consumers may be misled because "cane juice" refers to a sweetener.

24. "Evaporated cane juice," according to the FDA, "suggest[s] that the ingredients are made from or contain fruit or vegetable "juice" as defined in 21 CFR 120.1."[4]

25. For the purposes of declaring a food's ingredients by their common or usual names, there is no material difference between "evaporated cane juice" and "dehydrated cane juice solids."

26. "Dehydrated" is a commonly understood synonym for "evaporated" such that reasonable consumers will be equally misled by its use.[5]

27. By declaring "sugar" by a term which fails to describe the basic function and qualities of the ingredient, reasonable consumers are deceived into purchasing a product with added sugar as its second most predominant ingredient.

28. Given that the Product marketed as a simple, no-frills basic oatmeal and flax, pictured beneath fresh raspberries, consumers will expect that "[organic] dehydrated cane juice solids" is related to actual fruit, including those prominently displayed and is certainly not the equivalent of sugar.

29. This results in the impression that the Products are a better nutritional choice than other comparable products which truthfully and non-deceptively identify "sugar" as their second most predominant ingredient.

30. The Product's prominent use of the "Whole Grain" stamp on the front label gives plaintiffs and consumers the impression that the entire Product is made from whole grains.

31. However, flaxseeds are not whole grains, but oilseeds, according to the Whole Grain

---

[4] FDA Guidance, Ingredients Declared as Evaporated Cane Juice (May 2016)
[5] Collins Dictionary, Evaporate, synonyms.

5

Council – responsible for the Whole Grains stamp.

32. The promotion of the Product with the Whole Grains stamp despite containing non-whole grains is misleading to consumers who seek whole grain products made entirely from whole grains.

33. According to the Whole Grains Council, "The health benefits of whole grains are based on research that does not include oilseeds (flax, chia, sesame, etc.) or legumes/pulses (beans, lentils, soy)."[6]

34. The Product's deceptive labeling is especially egregious because Defendant is a grocery store with a reputation for selling health food products of high nutritional quality.

35. A growing number of consumers, including Plaintiffs, are paying more attention to the ingredients contained in foods they eat and are shunning excess, added sugars due to their association and contribution to ailments and conditions like coronary heart disease, obesity and diabetes and increasing their intake of whole grains.

36. The misleading terms used on the Products have a material bearing on price and consumer acceptance of the Products because they will pay more for products with the positive qualities associated with actual fruit juice, including naturally occurring vitamins and minerals and more whole grains compared to refined grains and seeds.

37. Had plaintiffs and Class members known the truth about the Products, they would not have bought them or would have paid less for them.

38. As a result of the false and misleading labeling, the Products are sold at premium prices, approximately no less than $4.29 per eight packets, excluding tax – compared to other similar products represented in a non-misleading way.

---

[6] Elaine Watson, Should the definition of 'whole grains' be expanded to include whole seeds, beans and legumes?, FoodNavigator.com, December 6, 2013.

Jurisdiction and Venue

39. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

40. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

41. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

42. Plaintiff Amy Warren is a citizen of New York.

43. Defendant Whole Foods Market Group, Inc. is a Delaware corporation with a principal place of business in Austin, Travis County, Texas.

44. This court has personal jurisdiction over Defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

45. Venue is proper because plaintiffs and Class Members reside in this Judicial District and Defendant does business in this Judicial District and the State of New York.

46. A substantial part of events and omissions giving rise to the claims occurred in this Judicial District.

Parties

47. Plaintiff Amy Warren is a citizen of Queens County, Queens, New York.

48. Plaintiff Iesha Conley is a citizen of Kings County, Brooklyn, New York.

49. Defendant is a Delaware corporation with a principal place of business in Austin, Travis County, Texas.

50. Plaintiff Warren purchased the Product on several occasions, including in or around

7

March and April 2019 at Whole Foods Market locations which include 238 Bedford Ave, Brooklyn, NY 11249.

51.     Plaintiff Conley purchased the Product on several occasions, including in or around September 2019 at Whole Foods Market locations which include 292 Ashland Pl, Brooklyn, NY 11217.

52.     During the class period, plaintiffs purchased defendant's Instant Oatmeal and Flax Product identified herein for personal use and consumption based on the above representations, for no less than the price indicated, *supra*, excluding tax.

53.     Plaintiffs would consider purchasing the Product again if there were assurances that the Product's representations were no longer misleading.

54.     Plaintiffs remain instant oatmeal consumers and have not disclaimed any intent to purchase Defendant's Product in the future.

55.     Going forward, plaintiffs will be harmed, without the issuance of an injunction, by not being able to rely on Defendant's label with any confidence.

## Class Allegations

56.     Plaintiffs bring this action on behalf of themselves and on behalf of all other members of the Class, defined as all persons who purchased the Product in the State of New York.

57.      Plaintiffs bring this Class Action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2) and 23(b)(3).

58.     Excluded from the Proposed Class are: Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns.

59.     Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiffs and Class members

are entitled to damages.

60. The claims and the basis for relief of plaintiffs are typical to other Class Members because all were subjected to the same representations.

61. Plaintiffs are adequate representatives because their interests do not conflict with other Class Members.

62. No individual inquiry is necessary since the focus is only on Defendant's practices and the Class is definable and ascertainable.

63. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

64. Counsel for plaintiffs are competent and experienced in complex class action litigation and intend to adequately and fairly protect Class Members' interests.

65. Plaintiffs seek class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>

66. Plaintiffs assert causes of action under the consumer protection statutes of New York, General Business Law ("GBL") §§ 349 & 350.

67. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

68. Plaintiffs and Class Members desired to purchase products which were as described by Defendant and expected by reasonable consumers, given the product type.

69. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

70. Plaintiffs and Class Members desired to purchase products which were as described by Defendant and expected by reasonable consumers, given the product type.

71. Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair

because it gives the impression to consumers the Products contain a fruit juice ingredient as opposed to the common sweetener, sugar and were entirely whole grains.

### Negligent Misrepresentation

72. Plaintiffs incorporate by reference all preceding paragraphs.

73. Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products through misrepresenting the characterizing properties of the second most predominant ingredient and giving the impression the entire product was whole grain.

74. Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

75. This duty is based on Defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

76. The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in Defendant, a well-known and respected brand in this sector.

77. Plaintiffs and Class Members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

78. Plaintiffs and Class Members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

### Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

79. Plaintiffs incorporate by reference all preceding paragraphs.

80. Defendant manufactures and sells products which contain the identified ingredient that contributes only sweetness and calories to the Product.

81. The Products warranted to Plaintiffs and Class Members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not due to the declaration of "organic dehydrated cane juice solids" instead of sugar and misleading identification of the Product through the "Whole Grain" stamp.

82. Defendant's ingredient list informed and warranted to Plaintiffs the Product contained a form of juice instead of sugar and were entirely whole grain.

83. Defendant had a duty to disclose and/or provide a non-deceptive name of the sweetener ingredient and whole grain components and knew or should have known same were false or misleading.

84. This duty is based, in part, on Defendant's position as one of the most recognized companies in the nation in this sector.

85. Plaintiffs provided or will provide notice to Defendant and/or its agents, representatives, retailers and their employees.

86. The Products did not conform to their affirmations of fact and promises due to Defendant's actions and were not merchantable.

87. Plaintiffs and Class Members relied on Defendant's claims, paying more than they would have.

## Unjust Enrichment

88. Plaintiffs incorporate by references all preceding paragraphs.

89. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiffs and Class Members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiffs demand a jury trial on all issues.

**WHEREFORE,** Plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying plaintiffs as representatives and the undersigned as counsel for the Class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove and/or refrain from the challenged representations, restitution and disgorgement for Class Members pursuant to the consumer protection laws of the State of New York;

4. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and consumer protection law claims, and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   August 18, 2020

                                  Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

        *-and-*

Reese LLP
Michael R. Reese
100 West 93rd Street, 16th Floor

New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*

Peter N. Wasylyk
Law Offices of Peter N. Wasylyk
1307 Chalkstone Avenue
Providence, RI 02908
Telephone: 401-831-7730
Facsimile: 401-861-6064
pnwlaw@aol.com
(pro hac vice forthcoming……)

1:19-cv-06448-ENV-CLP
United States District Court
Eastern District of New York

Amy Warren, Iesha Conley, individually and on behalf of all others similarly situated,

                            Plaintiffs,

   - against -

Whole Foods Market Group, Inc.,
                            Defendant

## First Amended Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
 Great Neck NY 11021-3104
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  August 18, 2020

                                               /s/ Spencer Sheehan
                                               Spencer Sheehan