UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
AMY WARREN and IESHA CONLEY,
individually and on behalf of all others
similarly situated,

                Plaintiffs,           **MEMORANDUM AND ORDER**

                v.                                19-CV-6448 (RPK) (LB)

WHOLE FOODS MARKET GROUP, INC.,

                Defendant.
----------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

On behalf of themselves and all New Yorkers similarly situated, sugar-conscious plaintiffs Amy Warren and Iesha Conley bring this suit against defendant Whole Foods Market Group, Inc. ("Whole Foods"). Ms. Warren and Ms. Conley assert that the packaging of Whole Foods' "Oats & Flax" instant oatmeal tricked them into paying inflated prices. Whole Foods now moves to dismiss. I grant defendant's motion.

## BACKGROUND

Under its 365 Everyday Value brand, Whole Foods sells "Oats & Flax Instant Oatmeal." Am. Compl. ¶ 9 (Dkt. #15). The front of each oatmeal box bears a stamp on its bottom right corner that says "100% Whole Grain – 18g or more per serving."

1



Am. Compl. 2 fig.1: The Box Front

The back lists the oatmeal's ingredients: "organic rolled oats, organic dehydrated cane juice solids, organic flaxseed, sea salt." *Id.* ¶ 10. "[D]ehydrated cane juice solids," as it turns out, is just another term for "sugar." *Id.* ¶ 16. Immediately to the left of the ingredient list, in text the same size or large, the nutrition label states "Sugars 11g." Def.'s Ex. 1 (Dkt. #22-1) ("Ex. 1").



Ex. 1: The Back Label

Amy Warren and Iesha Conley claim this packaging misled them into buying Whole Foods' oatmeal at premium prices. *Id.* ¶ 6. Hoping to avoid added sugar, they allege that they purchased the oatmeal believing that "dehydrated cane juice solids" referred to some sort of fruit juice—not sugar. *Id.* ¶ 71. Ms. Warren and Ms. Conley also say the whole grain stamp misled them into thinking the oatmeal contains only whole grains. *Id.* ¶¶ 30-31. In fact, though, it

contains flax, which, they note, is not a grain at all, but an "oilseed." *Id.* ¶ 31. Had they known the reality about Whole Foods' oatmeal, they say, they would never have paid so much. *Id.* ¶¶ 36-37. In their complaint, plaintiffs cite Food and Drug Administration ("FDA") guidance heavily. *Id*. ¶¶ 12-25.

Ms. Warren and Ms. Conley now bring this putative class action on behalf of themselves and all others in New York who were deceived by the packaging. Seeking damages and injunctive relief, *id*. ¶¶ 59, 65, they allege violations of (i) Sections 349 and (ii) Section 350 of New York's General Business Law ("GBL"), and they also pursue claims of (iii) negligent misrepresentation; (iv) breach of express warranty; (v) breach of implied warranty; (vi) breach of a written warranty under the Magnuson-Moss Warranty Act ("MMWA"); and (vii) unjust enrichment, *id*. ¶¶ 66-89. Whole Foods has moved to dismiss all claims.

## STANDARD OF REVIEW

When evaluating a motion to dismiss under Rule 12(b)(6), a court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co., Ltd. v. Hon Hai Precision Indus. Co*., 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v. 5th Ave. Photo Inc*., 624 F.3d 106, 108 (2d Cir. 2010)). To survive the motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means, for example, that a complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

Where, as here, plaintiffs allege negligent misrepresentation, that claim must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 583 (2d Cir. 2005). Under Rule 9(b), plaintiffs must allege knowledge and intent, and they may do so "through allegations of a motive to deceive and access to accurate information." *Id.* at 579 (quoting *Cohen v. Koenig*, 25 F.3d 1168, 1173-74 (2d Cir. 1994)). To succeed, these allegations must be backed by a showing of "facts giving rise to a strong inference of fraudulent intent." *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir. 1993) (internal quotations omitted). Additionally, a plaintiff must allege "the time, place, speaker and sometimes even the content of the alleged misrepresentation." *Ibid.*

## DISCUSSION

Seeking damages and injunctive relief, plaintiffs allege violations of (i) Section 349 and (ii) Section 350 of New York's General Business Law, which prohibit deceptive acts and false advertising respectively; (iii) negligent misrepresentation; (iv) breach of express warranty; (v) breach of implied warranty; (vi) breach of a written warranty under the MMWA; and (vii) unjust enrichment. Am. Compl. ¶¶ 59, 65-89. Whole Foods challenges plaintiffs' standing to seek injunctive relief and moves to dismiss their suit in its entirety. For the reasons that follow, I dismiss all seven claims. Since plaintiffs' claims all fail as a matter of law, the matter of injunctive standing need not be decided. *See Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 703 n.1 (2d Cir. 2020) (summary order); *Wallace v. Wise Foods, Inc.*, No. 20-CV-6831 (JPO), 2021 WL 3163599, at *1 n.2 (S.D.N.Y. July 26, 2021); *Boswell v. Bimbo Bakeries USA, Inc.*, No. 20-CV-8923 (JMF), 2021 WL 5144552, at *4 n.5 (S.D.N.Y. Nov. 4, 2021).

## I. Plaintiffs Fail to State Claims Under Sections 349 and 350

Sections 349 and 350 of New York General Business Law protect New York's consumers. Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or

5

commerce or in the furnishing of any service in this state," and Section 350 bars "[f]alse advertising." *See* N.Y. Gen. Bus. Law §§ 349 & 350 (McKinney 2020). Both employ the same test. *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. 2012). To state claims under either section, plaintiffs "must plausibly allege that [Whole Foods] has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [they] suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch*, 18 N.Y.3d at 941).

Ms. Warren and Ms. Conley contend that Whole Foods' packaging materially misled them in two ways: by "giv[ing] the impression" that the oatmeal "contain[s] a fruit juice ingredient as opposed to the common sweetener, sugar," and by conveying through the use of a "whole grain" stamp that the product consisted entirely of whole grains. Am. Compl. ¶ 71. Whole Foods denies that the packaging is misleading and contends that the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, preempts this suit. Def.'s Mem. of L. in Supp. 5-13 (Dkt. #21) ("Mem. in Supp."). While Whole Foods' preemption argument lacks merit, plaintiffs have not plausibly alleged that the oatmeal's packaging is materially misleading.

### A. The FDA Regulations Neither Preempt Nor Control

Federal law does not preempt plaintiffs' GBL claims, but the regulations that plaintiffs cite bear little weight in determining liability under GBL Sections 349 and 350.

#### 1. The FDCA Does Not Preempt Plaintiffs' GBL Claims

Federal law does not preempt plaintiffs' claims. Whole Foods contends that plaintiffs' Sections 349 and 350 claims are preempted by the FDCA because plaintiffs' theory of liability for the "dehydrated cane juice solids" language rests on FDA guidance discouraging the term's use. Mem. in Supp. 12. Therefore, Whole Foods argues, this suit is an FDCA enforcement action in disguise. And because the FDCA authorizes only the United States to enforce its provisions, that

statute preempts plaintiffs' suit. Since the Amended Complaint does not necessarily need to be read as relying entirely on FDA guidance, though, plaintiffs' suit is not preempted.

The principle that "enforcement of the FDCA is the sole province of the FDA" is "well established." *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Pracs. Litig.*, 701 F. Supp. 2d 356, 369 (E.D.N.Y. 2010) (citing *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001)). The FDCA "leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance." *Buckman*, 531 U.S. at 349 n.4. Not only does this bar plaintiffs from suing for noncompliance with the FDCA directly, but it also bars plaintiffs from enforcing the FDCA via state-law claims. "Where a state law claim would not exist but for a FDCA regulation, [21 U.S.C.] § 337(a) impliedly preempts [it]." *Patane v. Nestlé Waters N. Am., Inc.*, 314 F. Supp. 3d 375, 387 (D. Conn. 2018).

The FDCA, though, does not preempt all suits involving FDA-regulated products. Rather, it preempts only suits that "depend entirely upon[] an FDCA violation." *In re Bayer Corp.*, 701 F. Supp. 2d at 369. Claims "premised on conduct that would give rise to liability under traditional common law principles" remain viable. *Ibid*. So long as plaintiffs are not suing for a violation of the FDCA alone, they may "incorporate" reference to FDCA violations into their suit. *Ibid.*

Ms. Warren's and Ms. Conley's claims about "dehydrated cane juice solids" fall into the un-preempted category. Whole Foods reads plaintiffs' complaint as saying that the term "dehydrated cane juice solids" is only misleading because the FDA guidance says it is. If so, then this claim would "depend entirely upon[] an FDCA violation" and therefore be barred. *Ibid*. But plaintiffs say that they cite the FDA's guidance merely as evidence and that "dehydrated cane juice solids" is deceptive. Pls.' Mem. of L. in Opp. 10, 11-12 (Dkt. #24) ("Mem. in Opp."). "[C]onstruing all ambiguities and drawing all inferences in . . . plaintiffs' favor," I agree—

plaintiffs' allegations can be read as resting on broader grounds than as alleging a violation of the FDA's guidance alone. *Aurecchione v. Schoolman Transp. Sys., Inc*., 426 F.3d 635, 638 (2d Cir. 2005) (internal quotations omitted). "Although these statements touch on areas regulated by the FDA, and . . . even . . . reference . . . FDA definitions," their "misleading nature . . . can be verified without relying on any special expertise of the FDA and is therefore properly before this Court." *Dayan v. Swiss-Am. Prods., Inc*., No. 15-CV-6895 (DLI) (VMS), 2017 WL 1214485, at *4 (E.D.N.Y. Mar. 31, 2017) (quoting *In re Bayer Corp.*, 701 F. Supp. 2d at 375). Plaintiffs "threaded the needle and alleged conduct that violates the FDCA but sounds in traditional principles of state law and would give rise to recovery even had the FDCA never been enacted." *In re Bayer Corp.*, 701 F. Supp. 2d at 375. The FDCA does not preempt their claim.

### 2. The Federal Regulations Are Not Probative of Liability

While the FDCA does not preempt the claims, neither are FDA regulations controlling. The FDA and New York law apply different standards. The FDA has promulgated some categorical rules concerning whether food labels qualify as false or misleading under the FDCA. One such regulation requires most ingredients on food labels to be listed by their common or usual name, in descending order of predominance by weight. 21 C.F.R. § 101.4; *see Ingredients Declared As Evaporated Cane Juice: Guidance for Industry*, available at https://www.fda.gov/media/97827/download (last visited Dec. 1, 2021). In contrast, whether a statement on a food label is misleading under GBL Sections 349 and 350 depends on a context-specific inquiry into whether a *reasonable* consumer, viewing the representation in *context*, would *likely* be misled. *Mantikas v. Kellogg Co*., 910 F.3d 633, 636 (2d Cir. 2018) (citation omitted). Because of these differences, courts have concluded that FDA guidance is "without consequence" when stating a claim under New York law. *Steele v. Wegmans Food Mkts, Inc*., 472 F. Supp. 3d 47, 49 (S.D.N.Y. 2020) (citing *PDK Labs Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997));

8

*Pichardo v. Only What You Need, Inc.*, No. 20-CV-493 (VEC), 2020 WL 6323775, at *3 n.6 (S.D.N.Y. Oct. 27, 2020) ("Plaintiffs' claims regarding FDA regulations are not relevant to determining whether a label is deceptive or misleading under GBL §§ 349-50."). Here, the "[c]omplaint does not allege that reasonable consumers are aware of these complex regulations, much less that they incorporate the regulations into their day-to-day marketplace expectations." *Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 242-43 (S.D.N.Y. 2021) (quoting *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104 (RA), 2021 WL 168541, at *3 (S.D.N.Y. Jan. 19, 2021)). Nor do plaintiffs supply "extrinsic evidence that the perceptions of ordinary consumers align with these various labeling standards." *N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 519 (S.D.N.Y. 2013). Therefore, plaintiffs must plead that Whole Foods' packaging is likely misleading on its own, in context, to a reasonable consumer. *Steele*, 472 F. Supp. 3d at 50 ("The point here is not conformity with this or that standard . . . but whether the [representation] was deceptive.").

### B. Plaintiffs Fail to Allege Whole Foods' Packaging Is Materially Misleading

Plaintiffs have not adequately pleaded that Whole Foods' packaging is materially misleading. As noted above, materially misleading representations are those "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Mantikas*, 910 F.3d at 636 (internal quotations omitted). The inquiry is "objective," *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007), and a court may decide whether conduct is materially misleading as a matter of law, *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). "In determining whether a reasonable consumer would have been misled . . . context is crucial." *Mantikas*, 910 F.3d at 636 (internal quotations omitted). The inquiry turns on "[t]he entire mosaic . . . rather than each tile separately." *Davis v. Hain Celestial Grp., Inc*, 297 F. Supp. 3d 327, 334 (E.D.N.Y. 2018) (quoting *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015)).

9

Plaintiffs claim to have been misled in two ways. First, they assert that the packaging misled them regarding the product's sugar content. Second, plaintiffs allege that a whole-grain stamp on the packaging fooled them into thinking that the product consisted only of whole grains, without any non-grain components. *See* Am. Compl. ¶¶ 5 & 30. I evaluate each claim in turn.

### 1. In Context, "Dehydrated Cane Juice Solids" Does Not Mislead

Plaintiffs have failed to plausibly allege that the product's packaging would mislead a reasonable consumer by "giv[ing] the impression" that the oatmeal "contain[s] a fruit juice ingredient as opposed to the common sweetener, sugar." *Id*. ¶ 71.

Insofar as plaintiffs are alleging that a reasonable consumer would be materially misled as to the sugar content of the product, they have failed to state a claim. That theory finds no support on the front of the box. Plaintiffs suggest that Whole Foods' marketing of its product "as a simple, no-frills basic oatmeal and flax" misleads consumers because a reasonable consumer would not expect the oatmeal to contain sugar as its "second most predominant ingredient." *Id.* ¶¶ 28-29. But while the front of the box bills the product as "low fat," there are no representations that the oatmeal is "sugar-free," "low in sugar," "without added sugar," or anything similar. *See* Am. Compl. ¶ 9. A reasonable consumer would not be tricked into believing that a product is sugar-free or low in sugar simply because the product is labeled "instant oatmeal" or "Oats & Flax."

I therefore turn to the back of the box, to "the spot consumers are trained to look" to clarify a product's contents: the ingredients list. *Davis*, 297 F. Supp. 3d at 337. As plaintiffs say, Whole Foods lists "sugar" as "dehydrated cane juice solids." Ex. 1. Plaintiffs allege that "[b]y declaring 'sugar' by a term which fails to describe the basic function and qualities of the ingredient," Whole Foods deceives "reasonable consumers . . . into purchasing a product with added sugar as its second most predominant ingredient." Am. Compl. ¶ 27. But while some consumers may not recognize "dehydrated cane juice solids" as sugar from the ingredients list alone, immediately to

the left consumers will find the far larger and more prominent nutrition label. And there, printed in font the same size as the ingredient list or larger, are the words: "Sugar 11g." Ex. 1.

"Courts 'view each allegedly misleading statement in light of its context on the product label or advertisement as a whole.'" *Belfiore*, 311 F.R.D. at 53 (quoting *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427 (NGG) (RML), 2014 WL 4773991, at *8 (E.D.N.Y. Sept. 24, 2014)). In that analysis, "font size, placement, or emphasis" count. *Rivera v. Navient Sols., LLC*, No. 20-CV-1284 (LJL), 2020 WL 4895698, at *9 (S.D.N.Y. Aug. 19, 2020) (quoting *Delgado*, 2014 WL 4773991, at *8). Accordingly, I consider not only the ingredient list, but also the immediately adjacent and much larger nutrition label and its prominent words, "Sugars 11g." It seems unlikely that a reasonable consumer interested in a product's sugar content would ignore the very place its sugar content is disclosed. And even if a reasonable consumer was unaware of sugar's many names, or of the nutrition label's purpose, the fact remains that the words "Sugar 11g" are prominently displayed immediately next to the ingredient list. Those words are hard to miss. *See Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 311-12 (S.D.N.Y. 2017) ("Assuming that a reasonable consumer might ignore the evidence plainly before him attributes to consumers a level of stupidity that the Court cannot countenance and that is not actionable under G.B.L. § 349." (internal quotations omitted)), *aff'd sub nom*. *Kommer v. Bayer Consumer Health, a Div. of Bayer AG*, 710 F. App'x 43 (2d Cir. 2018). Accordingly, it is not plausible that a reasonable consumer would have been misled about the product's sugar content.

Nor have plaintiffs adequately pleaded that the term "dehydrated cane juice solids" would materially mislead a reasonable consumer by signaling that the product's sugar content comes from fruit. *See* Am. Compl. ¶¶ 28, 36 & 71. As with the product's sugar content, this analysis begins with the front of the box and ends on its back. Plaintiffs assert that the box front itself

11

somehow suggests a "fruit juice ingredient," highlighting the depiction of "a simple, no-frills basic oatmeal and flax, pictured beneath fresh raspberries." *Id.* ¶¶ 28 & 71. But just as the front bears no claims like "sugar-free" or "free of added sugar," neither does it bear slogans like "contains fruit" or "made with real fruit." *Id.* ¶ 9. Nor does product's name, "Oats & Flax," suggest fruit. *Ibid.* At most, a reasonable consumer might wonder whether the oatmeal contained raspberries, the "actual fruit . . . prominently displayed" on the front of the box, *id.* ¶ 28, but a quick trip to the ingredient label dispels that idea, *see* Ex. 1 (no reference to "raspberries" anywhere); *Melendez v. ONE Brands, LLC*, No. 18-CV-6650 (CBA) (SJB), 2020 WL 1283793, at *7 (E.D.N.Y. Mar. 16, 2020) (explaining a reasonable consumer would look to the ingredient panel to clarify ambiguity).

This leaves plaintiffs relying on the words of the ingredients label. But the label speaks of *cane* juice, not *fruit* juice. As the complaint itself acknowledges, juices come from products besides fruit. *See id.* ¶ 17; *see also, e.g.* Juice, *Merriam-Webster.com*, https://www.merriam-webster.com/dictionary/juice (accessed Nov. 30, 2021) (defining juice as "the extractable fluid contents of cells or tissues"); Juice, *oed.com*, https://www.oed.com/view/Entry/101976 (accessed Nov. 30, 2021) (defining juice variously as "the watery or liquid parts of vegetables or fruits," "alcoholic liquor," and "[t]he liquor from *sugar cane*." (emphasis added)). Plaintiffs offer no reason why a reasonable consumer would conclude that "cane juice" means "fruit juice." Without more than an image including raspberries on the box front and the term "cane juice" (rather than "cane sugar" or "cane syrup") on the back, plaintiffs have not plausibly alleged that a reasonable consumer would conclude that the oatmeal contained a "fruit juice ingredient."

### 2. In Context, the "Whole Grain" Stamp Does Not Mislead

Nor is the whole-grain stamp materially misleading. Plaintiffs allege that the stamp stating "100% Whole Grain – 18g or more per serving," *see* Am. Compl. ¶ 9, gives the inaccurate "impression that the entire [p]roduct is made from whole grains," *id.* ¶ 30. Plaintiffs' claim that

12

they understood the stamp that way is hard to square with their assertion that they believed, based on the ingredients label, that the product contained "a fruit juice ingredient." *See id.* ¶ 71. In any event, plaintiffs have failed to adequately plead that a reasonable consumer would be materially misled in this fashion.

Ms. Warren's and Ms. Conley's troubles begin with precedent. The Second Circuit considered stamps similar this one in *Mantikas*. *See* 910 F.3d at 637. The plaintiffs there read the whole-grain stamp as communicating that "the grain content" of the product "is entirely, or at least predominantly, whole grain." *Id.* at 638. The Second Circuit agreed, stating that "[t]he representation that a cracker is 'made with whole grain' would thus plausibly lead a reasonable consumer to conclude that the grain *ingredient* was entirely, or at least predominately, whole grain." *Id.* at 639 (emphasis added). In other words, the court of appeals (like the plaintiffs) understood the whole-grain stamp to make an apples-to-apples (or grain-to-grain) comparison of grains—that the grain in the product is mostly or all whole grain. Ms. Warren's and Ms. Conley's argument that defendant's whole-grain stamp communicates that defendant's oatmeal is made exclusively of grains requires giving the stamp a different construction from the one that the court of appeals found natural in *Mantikas*.

Furthermore, the text surrounding the whole-grain stamp makes Ms. Warren's and Ms. Conley's understanding of the stamp implausible. The oatmeal badge does not simply say "100% Whole Grain"; it states "100% Whole Grain – 18g or more per serving." That accompanying language communicates that whole grains make up a portion of each serving of oatmeal, rather than the whole thing. *Cf. id* at 637 (describing comparable language as "[c]larif[ying] the amount of whole grain as a proportion of a total serving").

13

More critically, the very name of defendant's product, "Oats & Flax," discloses another, nongrain ingredient—flax. *Mantikas* directs courts to "consider the challenged advertisement as a whole, including disclaimers and qualifying language," rather than considering phrases in isolation. *Id.* at 636. If disclosing a product's ingredients in its name is not enough to dispel misapprehensions based on an isolated phrase, then it is unclear what sort of "disclaimer[] or qualifying language" can be expected to do so. *Ibid.* Taking the front of the oatmeal package as a whole, it is not plausible that the whole-grain stamp on Whole Foods' "Oats & Flax" oatmeal would mislead a reasonable consumer.

Even if I found plaintiffs' interpretation of the whole-grain badge more plausible, that understanding would be—at most—one possible reading of an ambiguous term. *See Mantikas*, 910 F.3d at 637-39 (different understanding of "whole grain" stamp). A plaintiff whose claim turns on an "unavoidable interpretation of an allegedly deceptive statement[] may rely upon it without further investigation." *Boswell,* 2021 WL 5144552, at *2 (quoting *In re: 100% Grated Parmesan*, 275 F. Supp. 3d at 923). But "consumers who interpret ambiguous statements in an unnatural or debatable manner do so unreasonably if an ingredient label would set them straight." *Ibid.* (quoting *100% Grated Parmesan*, 275 F. Supp. 3d at 923); *see Engram v. GSK Consumer Healthcare Holdings*, 19-CV-2886 (EK) (PK), 2021 WL 4502439, at *5 (E.D.N.Y. Sep. 30, 2021). Plaintiffs' understanding of the whole-grain badge is debatable at best. And the ingredient label would set plaintiffs straight. That label lists several non-grain ingredients: organic dehydrated cane juice solids, organic flaxseed, and sea salt. Am. Compl. ¶ 10. Given that label, plaintiffs' allegations would fall short even if their reading of the whole-grain stamp, in isolation, were a colorable construction.

## II. Plaintiffs' Allegations of Negligent Misrepresentation Are Insufficient

Ms. Warren's and Ms. Conley's negligent misrepresentation claims are also dismissed. To make a successful negligent misrepresentation claim under New York law, a plaintiff must allege: (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment. *Anschutz Corp. v. Merrill Lynch & Co.,* 690 F.3d 98, 114 (2d Cir. 2012) (internal quotations omitted). These claims are subject to Rule 9(b)'s heighted pleading standards. *See Aetna Cas. & Sur. Co.*, 404 F.3d at 583.

Since plaintiffs "fail to adequately plead that [d]efendant's [p]roduct conveyed incorrect information, their negligent misrepresentation claim fails." *Dashnau*, 529 F. Supp. 3d at 248. Even if this were not enough, Ms. Warren's and Ms. Conley's claim falls short for at least two additional reasons: 1) they do not successfully allege that a special relationship existed between them and Whole Foods, and 2) the economic loss doctrine bars their claim.

### A. Plaintiffs Do Not Establish a Special Relationship

Liability for negligent misrepresentation is "imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust," like lawyers, engineers, or other professionals. *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (N.Y. App. Div. 1996). Plaintiffs neither adequately plead that they enjoyed a special relationship with Whole Foods, nor that Whole Foods possessed specialized expertise. "In the commercial context, a closer degree of trust between the parties than that of the ordinary buyer and seller is required to establish the 'existence of . . . a special relationship . . . [capable of] giv[ing] rise to an exceptional duty

15

regarding commercial speech and justifiable reliance on such speech.'" *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 (MKB), 2015 WL 5579872, at *24 (E.D.N.Y. Sept. 22, 2015) (quoting *Kimmell*, 89 N.Y.2d at 264). Alternatively, to establish liability under a "special expertise" theory, plaintiffs must "emphatically allege[]" in the alternative (1) that Whole Foods "held or appeared to hold unique or special expertise" and (2) "was aware of the use to which the information would be put and supplied it for that purpose." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004) (internal quotations omitted). Describing only an arms-length transaction, Ms. Warren and Ms. Conley fail to allege any such relationship of "special confidence and trust" existed between them and Whole Foods. Nor do they suggest that Whole Foods was privy to secret scientific studies concerning its product, or that it dealt in technical products like dietary supplements or airplanes, as courts have required to establish special expertise claims. *See, e.g.*, *Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 75 (E.D.N.Y. 2017); *Hughes v. Ester C Co., NBTY, Inc.*, 930 F. Supp. 2d 439, 475 (E.D.N.Y. 2013); *Wells Fargo Bank Nw., N.A. v. Taca Intern. Airlines, S.A.*, 247 F. Supp. 2d 352, 366-67 (S.D.N.Y. 2002). In sum, Ms. Warren and Ms. Conley only plead that Whole Foods sold a common commercial product—oatmeal—via an arms-length transaction. This is not enough to establish a special relationship.

### B. The Economic Loss Doctrine Also Bars a Negligent Misrepresentation Claim

Even if plaintiffs did allege a special relationship, the economic loss doctrine bars their claim. Negligent misrepresentation sounds in tort, and the economic loss doctrine "restricts the remedy of plaintiffs who have suffered economic loss, but not personal or property injury, to an action in contract." *Elkind v. Revlon Consumer Prod. Corp.*, No. 14-CV-2484 (JS) (AKT), 2015 WL 2344134, at *12 (E.D.N.Y. May 14, 2015); *see Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015). Since Ms. Warren and Ms. Conley allege no physical or property

harm, only that they paid price premiums, Am. Compl. ¶ 37, the economic loss doctrine applies, *Gordon v. Hain Celestial Grp.*, No. 16-CV-6526 (KBF), 2017 WL 213815, at *6 (S.D.N.Y. Jan. 18, 2017). Therefore, plaintiffs' tort claim is barred.

**III.        Plaintiffs' Express Warranty Claim Is Barred**

Ms. Warren's and Ms. Conley's express warranty claim fails both because plaintiffs did not give presuit notice and because they do not allege that Whole Foods breached a warranty.

**A. Plaintiffs Failed to Give Presuit Notice**

First, plaintiffs neglected to give presuit notice as New York law requires. In New York, "a buyer must provide the seller with timely notice of an alleged breach of warranty." *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) (citing N.Y. U.C.C. § 2-607(3)(a) ("[T]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.")). Claims brought without notice must be dismissed. *Id.* at 144. Ms. Warren and Ms. Conley do not allege that they provided notice to Whole Foods. Instead, citing *Neri v. R.J Reynolds Tobacco Co.* and *Fischer v. Mead Johnson Laboratories*, they argue that the notice requirement does not apply to this suit. Mem. in Opp. 14; No. 98-CV-371, 2000 WL 33911224, at *19 (N.D.N.Y. Sept.28, 2000); 41 A.D.2d 737 257, 258 (N.Y. App. Div. 1973).

While is true that several New York cases recognize a notice-requirement exception for retail sales, "the exception appears to be exclusively applied where a party alleges physical, in addition to economic, injury." *Colella*, 348 F. Supp. 3d at 144; *see Fischer*, 41 A.D.2d 737, 737 (birth control pill resulted in bleeding in eye); *Silverstein v. Macy & Co.*, 266 A.D. 5, 7 (N.Y. App. Div. 1943) (chin-up bar collapsed while plaintiff was using it, resulting in injuries); *Kennedy v. Woolworth Co.*, 205 A.D. 648, 648 (N.Y. App. Div. 1923) (candy either injured or killed a minor).

17

Plaintiffs allege no oatmeal-related injuries, so the notice requirement applies. Therefore, plaintiffs' express warranty claim must be dismissed.

### B. Plaintiffs Fail to Allege that Whole Foods Breached Any Warranty It Offered

Even if Ms. Warren and Ms. Conley were exempted from New York's notice requirement, they fail to allege that Whole Foods breached any warranty it made. Breach of warranty claims require, among other elements, breach of a material statement constituting a warranty. *Brumfield v. Trader Joe's Co.*, 17-CV-3239 (LGS), 2018 WL 4168956, at *3 (S.D.N.Y. Aug. 30, 2018) (citing *CBS Inc. v. Ziff-Davis Publ. Co.*, 75 N.Y.2d 496, 502-504 (N.Y. 1990)). The scope of an express warranty "necessarily depends on what a reasonable consumer would believe." *Kennedy v. Mondelez Glob. LLC*, No. 19-CV-302 (ENV) (SJB), 2020 WL 4006197, at *14 (E.D.N.Y. July 10, 2020) (internal quotation omitted). In other words, warranty claims apply the same "'reasonable consumer' standard . . . as that analyzed under New York's consumer protection law," Sections 349 and 350. *Ibid.* (citing *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 185 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020)). Since the oatmeal's packaging would not materially mislead a reasonable consumer under Sections 349 and 350, defendant has not breached any warranties on the product's packaging. *See* pp. 5-15, *supra*. Therefore, I dismiss this claim without prejudice.

## IV. Plaintiffs Fail to Plead a Breach of Implied Warranty

Plaintiffs' claim for breach of implied warranty also fails. The failure to provide presuit notice that dooms plaintiffs' express warranty claim is also fatal to plaintiffs' implied warranty claim. *See Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 392 (S.D.N.Y. 2021) (collecting cases). And even with notice, when it comes to food, the seller only breaches its implied warranty of merchantability when the food is inedible. *Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154 (JG) (RML), 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015) (citing

*Ackerman v. Coca-Cola Co.*, No. 9-CV-0395 (JG) (RML), 2010 WL 2925955, at *25 (E.D.N.Y. July 21, 2010)). Plaintiffs make no such allegations. And while plaintiffs cite *Jackson v. Eddy's LI RV Ctr.*, 845 F. Supp. 2d 523 (E.D.N.Y. 2012), in support of their implied warranty claim, *Jackson* does not support their position. Mem. in Opp. 15. In *Jackson*, the court found that a plaintiff successfully pleaded a breach of implied warranty where the motor home he purchased allegedly had defects "so severe as to have made it unsafe for use" and had been out of service for twenty-four months. *Id.* at 527 (internal quotations omitted). Even if the warranty standard is the same for motor homes and for food, the defects alleged in *Jackson* are of a different order of magnitude. Unlike the motor home in *Jackson*, Whole Foods oatmeal is not alleged to be "unsafe for use" or so bad as to be inedible. Accordingly, plaintiffs' implied warranty claim is dismissed.

V.  **Plaintiffs Fail to State a Claim Under the MMWA**

Ms. Warren's and Ms. Conley's MMWA claim is also dismissed. The MMWA applies state warranty law. *See Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 540 (E.D.N.Y. 2006). Since plaintiffs fail to allege state law claims, their MMWA claim fails too. *See In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2016 WL 3920353, at *18 (S.D.N.Y. July 15, 2016); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n.2 (9th Cir. 2009).

VI. **Plaintiffs' Unjust Enrichment Claim Is Dismissed as Duplicative**

Finally, Ms. Warren's and Ms. Conley's unjust enrichment claim is dismissed. When an unjust enrichment claim rests on the same allegations as a complaint's other claims for consumer deception, that claim "must be dismissed as duplicative" when the other claims fail. *Dashnau*, 529 F. Supp. 3d at 250 (citing *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 809 (S.D.N.Y. 2021)) (collecting cases). Since plaintiffs rely on the same allegations for this claim as for their other claims, and those claims fail, *see* pp. 5-19, *supra*, this claim too must be dismissed.

## CONCLUSION

Plaintiffs' (i) Section 349 and (ii) Section 350 claims and their claims for (iii) negligent misrepresentation; (iv) breach of express warranty; (v) breach of implied warranty; (vi) breach of a written warranty under the MMWA; and (vii) unjust enrichment are dismissed without prejudice. If plaintiffs wish to amend their pleadings, they shall file a motion within 30 days seeking leave to amend with the proposed Second Amended Complaint attached as an exhibit. The motion should explain how the Second Amended Complaint addresses the pleading defects identified in this opinion. Otherwise, judgment shall be entered.

SO ORDERED.

/s/ Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated: December 3, 2021
Brooklyn, New York